UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-61738-CIV-SMITH/SANCHEZ

CARMEN DELGADO,

    Plaintiff,

v.

MARTIN O'MALLEY,
Commissioner, Social Security Administration

    Defendant.
_____/

**REPORT AND RECOMMENDATION ON REVIEW OF COMMISSIONER'S DECISION**

The Plaintiff, Carmen Delgado ("Delgado" or "Plaintiff"), brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits.[1] The parties filed cross-motions for summary judgment. ECF Nos. 13, 17. After careful consideration of the administrative record, the motions, and the applicable law, and the undersigned being otherwise duly advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that the Commissioner's Motion for Summary Judgment, ECF No. 17, be **GRANTED**, that Delgado's Motion for Summary Judgment, ECF No. 13, be **DENIED**, and that the Commissioner's decision be **AFFIRMED**.

---

[1] The Honorable Rodney Smith, United States District Judge, referred this matter to the undersigned for a Report and Recommendation on any dispositive matters. ECF No. 10.

I.  BACKGROUND

Delgado filed for disability benefits in July 2020, alleging an onset date of July 15, 2018. Tr. 18.[2] She was later permitted to amend her alleged onset date of disability to April 20, 2019. Tr. 18, 40. Delgado's application was denied initially and on reconsideration. Tr. 62-75, 77-85. At Delgado's request, an Administrative Law Judge ("ALJ") held a hearing on April 6, 2023. Tr. 18, 106-07. Delgado, who was represented by counsel, testified at the hearing, as did a vocational expert. Tr. 18.

On June 5, 2023, the ALJ issued a written decision in which she found that Delgado did not have a disability as defined in the Social Security Act. Tr. 15-36. The Appeals Council denied Delgado's request for review of the ALJ's decision, Tr. 1-7, which made the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Delgado now asks this Court to reverse the Commissioner's decision and remand for an award of benefits, or alternatively, for the ALJ to reconsider the record and her conclusion. ECF No. 13 at 27-28.

II.  THE ALJ'S DECISION

The ALJ must follow these five steps set forth in 20 C.F.R. §§ 416.920 and 404.1520 when she evaluates a claim for disability benefits:

1. Is the [claimant] performing substantial gainful activity;

2. Does [the claimant] have a severe impairment;

3. Does [the claimant] have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

4. Can [the claimant] perform her past relevant work; and

5. Based on her age, education, and work experience, can [the claimant] perform other work of the sort found in the national economy.

---

[2] Citations to the transcript of proceedings before the Social Security Administration, filed at ECF No. 12, are to "Tr. [page #]."

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *see also, e.g.*, *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021); 20 C.F.R. § 404.1520(a)(4).

In this case, the ALJ made the following findings. At the first step, she concluded that Delgado had not engaged in substantial gainful activity since April 20, 2019, her amended alleged date of the onset of disability. Tr. 20.

At step two, the ALJ found that Delgado had severe impairments of degenerative joint disease of the bilateral knees with acquired pes planus and tibial tendonitis, status-post femoral shaft fracture, asthma, and obesity, and that these impairments imposed more than a minimal limitation on her ability to perform basic work activities. Tr. 20. The ALJ also found that the rest of Delgado's reported physical and mental impairments were "non-severe" because "they [did] not, either singularly or in combination, cause more than minimal effects on the claimant's ability to perform basic activities on a consistent basis." Tr. 21; *see also id.* at 22-23 (finding that mental impairments were "non-severe" because the impairments, when considered singly and in combination, "cause[d] no more than 'mild' limitation in any of the [mental] function areas *and* the evidence d[id] not otherwise indicate that there [wa]s more than a minimal limitation in the claimant's ability to do basic work activities").

At step three, the ALJ found Delgado did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." Tr. 23-24.

Next, the ALJ found that Delgado had the residual functional capacity ("RFC") to "perform sedentary work." Tr. 25. She could also "perform occasional climbing of ladders, ropes, and scaffolds," "occasionally kneel, crouch, and crawl," and "frequently climb ramps and stairs, balance, and stoop." Tr. 25. The ALJ, however, determined that Delgado must "avoid work at

3

unprotected heights," but she could "have occasional exposure to extreme temperatures and respiratory irritants." *Id.*

At step four, the ALJ found that Delgado could perform her past relevant work as a media director because that work did "not require the performance of work-related activities precluded by" Delgado's RFC. Tr. 29.

As a result of the foregoing findings, the ALJ found that Delgado was not disabled. Tr. 30.

### III.   ANALYSIS

Plaintiff makes three challenges to the ALJ's decision. First, she argues that the ALJ "failed to properly assess" the medical opinion evidence. ECF No. 13 at 5-16. Second, she argues that the ALJ's RFC finding is not supported by substantial evidence. *Id.* at 16-22. Third, she argues that the ALJ improperly classified Delgado's past work and failed to recognize her past work as a composite job. *Id.* at 22-27.

In a social security appeal, review of the ALJ's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied. *See Buckwalter*, 5 F.4th at 1320; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Buckwalter*, 5 F.4th at 1320 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A reviewing court "will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Id.* Under this limited review, a court must not "make fact-findings, re-weigh the evidence, or substitute [its] judgment for that of the Administrative Law Judge ('ALJ')." *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also, e.g.*, *Pupo v.*

Case 0:23-cv-61738-RS   Document 18   Entered on FLSD Docket 09/02/2024   Page 5 of 18

*Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1060 (11th Cir. 2021); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).  A reviewing court will, however, "review de novo the legal principles applied by the Commissioner in social security appeals."  *Pupo*, 17 F.4th at 1060; *see also, e.g.*, *Ingram*, 496 F.3d at 1260 ("[W]e review *de novo* the Commissioner's conclusions of law.").  Indeed, an ALJ's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

At the conclusion of its review, the Court has the authority to enter a judgment affirming, modifying, or reversing the decision of the ALJ, with or without remand.  *See* 42 U.S.C. § 405(g); *Perez v. Comm'r of Soc. Sec.*, No. 06-CV-1648, 2008 WL 191036, at *5 (M.D. Fla. Jan. 22, 2008).

**A. Delgado's Challenge to the ALJ's Assessment of Her Treating Physicians**

Plaintiff challenges the ALJ's assessment of her treating physicians—specifically Dr. Steinlauf, Dr. Cabrera, and Dr. Berkowitz.  First, Delgado argues that the ALJ's factual assessment of these physicians are inconsistent with the record and not supported by substantial evidence.  Second, Delgado argues that the ALJ did not properly analyze the supportability and consistency of their medical opinions.

    1. *Factual Assessment*

        a. Dr. Steven Steinlauf, M.D.

The ALJ concluded the following with respect to Dr. Steinlauf:

> The opinions of Steven Steinlauf, M.D. are persuasive. (Ex 9F; 13F).  There, Dr. Steinlauf indicated that the claimant was not disabled from an orthopedic perspective and reported, "I cannot explain the level of pain that she has both with activity and at rest..." (Ex. 13F/10).  Dr. Steinlauf added, "She states that she did see Dr. Harvey Schwartz and I have his note basically stating that he cannot come up with any definitive neurological etiology for such diffuse pain...." (Ex. 13F).  Dr.

> Steinlauf's findings remain consistent with the objective evidence showing er rehabilitation potential was described as "good" and over the course of treatment, she exhibited no signs of swelling or effusion in the knees and showed a full range of motion. Her gait and stance were also shown to be normal. (Ex. 14F/8). (Ex. 1F/27).

Tr. 27.

Delgado criticizes the ALJ decision as mischaracterizing both Dr. Steinlauf's opinions that Delgado was not disabled from an orthopedic perspective and his opinions related to Delgado's "stance and gait" and her need for a cane. *See* ECF No. 13 at 5-6. However, the ALJ's characterization of Dr. Steinlauf's opinion concerning disability from an orthopedic perspective is well supported by the record. *See* Tr. 1141 (Steinlauf notation that Delgado did "not merit disability from an ortho perspective"). With respect to the findings concerning Delgado's normal gait and stance, Delgado points to record evidence that she feels the ALJ overlooked or dismissed concerning the use of a cane. *See, e.g.*, ECF No. 13 at 6 ("Dr. Steinlauf repeatedly advised Delgado to continue using a cane – something the ALJ dismissed early on in her decision as not required."). But although Dr. Steinlauf recommended that Delgado use a cane as a prophylactic safety measure due to the issues that Delgado reported, he did not otherwise find that she medically required a cane, and the ALJ found, based on record evidence, that Delgado did not need an assistive device and that her gait and balance were normal, even if sometimes antalgic, *see* Tr. 21, 24, 1173; *see also, e.g.*, Tr. 530-31 (note that Delgado was "able to . . . ambulate without any assistive devices" even though she was using a cane for long distances). Delgado nonetheless argues that the ALJ's findings about Dr. Steinlauf are supported by only two opinions: one by Dr. Berkowitz in September 2020 where he stated that Delgado's "gait and stance were also shown to be normal," and the second from the hospital records from when Delgado was inpatient after her July 2018 fall. ECF No. 13 at 5. Even if the ALJ's findings regarding Delgado's normal gait and stance were

6

based only on those opinions, *but see* Tr. 24, 26 (finding that Delgado's gait and stance were normal and citing Dr. Berkowitz's August 25, 2022 notes, Tr. 1575, Dr. Cabrera's August 18, 2022 notes, Tr. 1584, and Dr. Prieto's March 11, 2022 notes), Plaintiff's arguments concerning Dr. Steinlauf essentially ask the Court to reweigh the evidence, and that is something the Court cannot do. *See, e.g.*, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Having reviewed Plaintiff's orthopedic records, Dr. Steinlauf's opinions, and the ALJ's discussion of Delgado's musculoskeletal impairments, Tr. 24, 26; *see also* Tr. 21, the Court finds that the ALJ properly analyzed the evidence in the context of the record and that substantial evidence supports her assessment of Dr. Steinlauf's opinion as "persuasive."

    b.  <u>Maria Cabrera, M.D.</u>

The ALJ concluded the following with respect to Dr. Cabrera:

> In January 2023, the claimant's treating source, Maria Cabrera, M.D. completed a checkbox medical source statement. (Ex. 44F). Dr. Cabrera's findings are unpersuasive. Although Dr. Cabrera is a treating psychiatrist, she saw the claimant only three times, on August 18, 2022, September 6, 2022, and December 15, 2022. In fact, Dr. Cabrera does not appear to have examined the claimant since December 15, 2022. Furthermore, Dr. Cabrera's opinions are not consistent with the medical evidence of record, or even her own notes and observations. As discussed at length above, the claimant has generally received rudimentary treatment for any alleged psychiatric impairments. Her affect, demeanor, and memory were often shown to be grossly normal. (Ex. 3F; Ex. 5F/1 – no memory loss, depression, agitation, or suicidal thoughts reported; Ex. 7F/71 – memory is intact).
>
> There are no significant findings of social deficits or an inability to perform tasks on a routine and consistent basis because of any severe mental disorder. (Ex. 26F/2; Ex. 42F/4 – attention and concentration are normal; Ex. 41F/3; 5F/1; 7F/90; Ex. 24F/10 – cooperative; Ex. 26F/1 "she was cooperative, pleasant…").

Tr. 28-29.

Delgado contends that the ALJ's conclusion is flawed because she commented, accurately, that Dr. Cabrera only saw Delgado three times, yet found the State agency consultants' contrary opinions persuasive, even though they did not directly examine Delgado. ECF No. 13 at 8;

7

*compare* Tr. 28 *with* Tr. 29.  Additionally, Delgado argues that the ALJ erred because there is substantial evidence in the record to support Dr. Cabrera's opinion of Delgado's mental impairments.  *See* ECF No. 13 at 8-11.

Delgado's arguments are unavailing.  First, ALJs properly consider administrative medical findings because Federal and State agency medical and psychological consultants are deemed "highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).  Second, record evidence—including Dr. Cabrera's own notes—undercuts Dr. Cabrera's checkbox medical source statement and supports the ALJ's opinion that Dr. Cabrera's opinions assessing the severity of Delgado's impairments were "unpersuasive."  For example, on the medical source statement, Dr. Cabrera checked boxes stating that Delgado had a "poor" ability to use judgment and no ability to maintain attention and concentration, Tr. 1596, but at each of their three sessions Dr. Cabrera found that Delgado's attention span and concentration were "normal" and that her judgment was "good."  Tr. 1584, 1588, 1591; *see also* Tr. 1347 (Dr. Prieto, clinical psychologist, found that Delgado's "[a]ttention and concentration appeared intact").  Similarly, although Dr. Cabrera concluded that Delgado has either no ability or a "poor" ability to "[u]nderstand, remember and carry out" job instructions and no ability to "behave in an emotionally stable manner" or to "[r]elate predictably in social situations," Tr. 1597, substantial evidence supports the ALJ's contrary findings that "there are no significant findings of social deficits or an inability to perform tasks on a routine and consistent basis because of any severe mental disorder."  Tr. 29; *see* Tr. 22-23 (ALJ's analysis of mental impairment claims in light of record evidence); *see also, e.g.*, Tr. 527, 810, 1575.  Moreover, the ALJ analyzed each of the "paragraph B" criteria in the context of the record in this case and found that the record evidence established that Delgado in fact had mental impairments (depression and anxiety) but that she had

only "mild" limitations from those impairments in each of the four paragraph B areas. Tr. 22-23; *see also infra* at Section B. Given these circumstances, the ALJ's determination that Dr. Cabrera's opinion was "unpersuasive" is supported by substantial record evidence. *See Buckwalter*, 5 F.4th at 1320.

   c. <u>Mario Berkowitz, M.D.</u>

The ALJ found the following regarding Dr. Berkowitz's opinions:

> The claimant's treating source, Mario Berkowitz, M.D. submitted a medical source statement addressing her impairments in November 2020. (See Ex. 11F). Dr. Berkowitz opined that the claimant experienced constant pain in her back with limited range of motion. Dr. Berkowitz opined further that the claimant could perform fine/gross manipulation on a consistent basis. (Ex. 11F). Dr. Berkowitz's findings are somewhat persuasive. Here, there is little evidence to support the "constant" nature of the claimant's back pain with limited range of motion. In fact, a CT scan of the lumbar spine in July 2018 showed no acute displaced fracture of the thoracic or lumbar spine. (Ex. 1F/45 normal lumbar lordosis, disc space preserved; Ex. 2F/14 –normal lumbar lordosis but disc osteophyte seen at L2-L3 level). Furthermore, the claimant has received conservative treatment for her spinal impairment including muscle relaxants, strengthening exercises and epidural steroidal injections. (Ex. 20F; Ex. 41F/2 – improved pain in the back with no radiation of the pain).

Tr. 29.

Delgado argues that the ALJ erred in her findings concerning Dr. Berkowitz's opinion because she did not acknowledge that Dr. Berkowitz repeatedly advised Delgado to "avoid squatting, kneeling, and stairs, as well as sitting for long periods of time with the knees bent" between September 2020 and December 2022, ECF No. 13 at 11 (citing Tr. 1177, 1193, 1494, 1498, 1580), and because there was "ample evidence" rather than "little evidence" that Delgado experienced constant back pain with limited range of motion, ECF No. 13 at 12-23.

While the record does contain evidence that Dr. Berkowitz advised Delgado to avoid squatting, kneeling, stairs, and sitting for long periods of time with her knees bent, and while there was also evidence that Delgado suffered back pain, there is also substantial evidence in the record

9

that indicates that Delgado was not so limited in her ability to squat, kneel, sit and use stairs and that undermines and contradicts Delgado's claims of constant back pain and limited range of motion. *See* Tr. 22, 26 (reviewing evidence). Indeed, the ALJ considered the medical evidence in the record, which included Dr. Luna's examination in March 2022—mentioning that Delgado's "[p]hysical examination was within normal limits," that the "[o]rthopedic examination was within normal limits for age and condition," and that Delgado had "mild gross limits" to her activities. Tr. 28, 1341. Here, the ALJ's determination that Dr. Berkowitz's opinion was "somewhat persuasive" is supported by substantial evidence. *See, e.g.*, *Moore*, 405 F.3d at 1213 (11th Cir. 2005) ("To the extent that [plaintiff] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner . . . even if the evidence preponderates against' the decision.") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (footnote omitted).

   2. *Supportability and Consistency Analysis*

Delgado also argues that the ALJ failed to consider the required factors when assessing the medical opinions provided in this case.

Under the post-2017 revised regulations, an ALJ does not defer or give specific evidentiary weight to any medical opinion or prior administrative findings but instead focuses on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5); *see also, e.g.*, *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022). Among these five factors,

supportability and consistency are the "most important factors [to] consider," and the ALJ has a responsibility to explain that they considered these two factors when evaluating medical expert testimony. 20 C.F.R. § 416.920c(b)(2). However, "the ALJ need not use any 'magic words' in considering the two factors." *Alvarez v. Comm'r of Soc. Sec.*, No. 20-24711-CIV-BLOOM/OTAZO-REYES, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022); *see also Frye v. Comm'r of Soc. Sec.*, No. 6:21-cv-741-DCI, 2022 WL 1045719, at *5 (M.D. Fla. Apr. 7, 2022) ("The ALJ may not have used the word 'supportability,' but he discussed the record with respect to the inconsistency of the opinions within the physicians own words, and the Court finds that to be adequate.").

While "supportability" asks the ALJ to analyze "the extent to which a medical source has articulated support for the medical source's own opinion," "consistency" refers to "the relationship between a medical source's opinion and other evidence within the record." *Rodriguez v. Comm'r of Soc. Sec.*, No. 20-cv-1674, 2022 WL 807443, at *5 (M.D. Fla. Mar. 17, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1)-(2)). In sum, the ALJ must address "whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record." *Id.* (citation omitted).

Delgado argues that the ALJ failed to analyze the supportability and consistency factors for the medical opinions from Dr. Steinlauf, Dr. Cabrera, Dr. Berkowitz, and the State non-examining consultants. ECF No. 13 at 15-16. Delgado, however, does little to explain *how* the ALJ "inadequately discussed, and otherwise supplied insufficient and/or flawed rationale" on these factors for the listed physicians. *Id.* at 16. After a careful review, the undersigned finds that the ALJ did not misapply § 404.1520c and the applicable law. Here, although the ALJ did not always use the "magic words" when addressing supportability and consistency, although her explanations

concerning supportability and consistency could certainly have been more robust, and although she at times utilized conclusory language, *see, e.g.*, Tr. 28 ("Furthermore, Dr. Cabrera's opinions are not consistent with the medical evidence of record, or even her own notes and observations."), the ALJ's opinion discussing the medical opinions and the record evidence demonstrates that she fully considered the medical opinions in accordance with requirements of 20 C.F.R. § 404.1520c and adequately analyzed whether the opinions of each physician were supported by his or her own records and whether they were consistent with the record as a whole. *See* Tr. 27-29; *Alvarez*, 2022 WL 2092886, at *2-3; *see also Battie v. Kijakazi*, No. 20-24444-CIV, 2022 WL 4000728, at *7 (S.D. Fla. Aug. 9, 2022) (concluding that even when ALJ made "conclusory finding[s]" on supportability and consistency, such error was harmless when there was substantial record evidence supporting the ALJ's endorsement of medical opinions), *report and recommendation adopted*, 2022 WL 3975093 (S.D. Fla. Sept. 1, 2022).

Furthermore, even if the ALJ's articulations concerning consistency and supportability fell short, "[c]ourts should 'decline[] to remand for express findings when doing so would be a "wasteful corrective exercise" in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.'" *Battie*, 2022 WL 4000728, at *7 (quoting *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) (quoting *Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981))); *see also, e.g.*, *Miller v. Barnhart*, 182 F. App'x 959, 960 (11th Cir. 2006) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Here, a remand for more detailed findings concerning consistency and supportability simply would not

alter the ALJ's findings and conclusions, their underlying basis, or the fact that the ALJ's findings and conclusions are supported by substantial evidence.

B. **Delgado's Challenge to the ALJ's RFC Calculation**

Delgado argues that the ALJ's determination concerning her residual functional capacity ("RFC") is incorrect and unsupported by substantial evidence because it (1) overestimates Delgado's mental RFC, (2) fails to adequately reflect functional limitations arising from Delgado's lumbar spine impairment, and (3) fails to account for Delgado's need for an assistive device. ECF No. 13 at 16-22. These arguments are unavailing.

As part of the sequential disability inquiry, if the claimant is found at Step 3 not to have a severe impairment that meets or equals a listed impairment, then the ALJ must determine her residual functional capacity. *See, e.g.*, *Phillips*, 357 F.3d at 1237. An RFC is the most "an individual can do despite his or her limitations or restrictions." *See* Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 at 34,476 (July 2, 1996). An ALJ holds the ultimate responsibility for determining a claimant's RFC and the resulting limitations, considering all relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 416.945(a)(3), 416.946(c). The RFC determination must be based on the relevant evidence, but "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

As discussed above, the ALJ specifically determined that Delgado had the RFC to:

> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can perform occasional climbing of ladders, ropes, and scaffolds. She can occasionally kneel, crouch, and crawl. The claimant can frequently climb ramps

and stairs, balance, and stoop.  She must avoid work at unprotected heights.  She can have occasional exposure to extreme temperatures and respiratory irritants.

Tr. 25.

Despite Delgado's contentions to the contrary, the record contains substantial evidence to support the ALJ's findings concerning Delgado's mental condition and impairments and their impact on her RFC.  Tr. 22-23.  For example, the ALJ analyzed the "broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders," which are commonly known as the "paragraph B" criteria.  They are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2)(b); *see* Tr. 22-23.  The ALJ concluded that Delgado's "determinable mental impairments cause[d] no more than 'mild' limitation in any of the functional areas," and that "the evidence [did] not otherwise indicate that there [was] more than a minimal limitation in [Delgado's] ability to do basic work activities," as the mental impairments were "non-severe."  Tr. 23.

The ALJ grounded her decision on a significant amount of record evidence.  Among other evidence, the ALJ cited to numerous instances where Delgado's affect, demeanor, and memory were shown to be normal, Tr. 22, 422, 429, 435, 444, 448, 453, 469, 559, where Delgado was described as cooperative and pleasant during medical examinations, Tr. 22, 469, 578, 1328, 1346, 1575, and where a mental status exam showed that Delgado's attention and concentration were intact and that she performed adequately on both a recitation assessment and a recall assessment, Tr. 23, 1347, 1584.  The ALJ further noted that the record revealed that Delgado's cognitive functioning was "grossly intact."  Tr. 23, 495, 610, 626, 674, 809.  The ALJ additionally found that Delgado had not received psychiatric hospitalization due to any severe decompensated mental

14

state, that Delgado had not required any form of aggressive treatment for her mental disorders, and that Delgado had not reported suicidal or homicidal ideations or hallucinations. Tr. 23, 1347, 526, 809, 1582, 1583, 1587, 1588, 1590, 1591. Here, substantial evidence supports the ALJ's determinations concerning Delgado's mental impairments, limitations, and RFC.

Likewise, substantial evidence supports the ALJ's determination of Delgado's physical RFC. Here, the ALJ reviewed and analyzed significant medical record evidence concerning Delgado's musculoskeletal impairments, including those impacting her spine and lower extremities. *See* Tr. 21, 24, 26. Although Delgado argues that the ALJ failed to adequately consider limitations arising from Delgado's lumbar spine impairment, the ALJ addressed Delgado's lumbar spine limitations and noted that a CT scan showed no acute displaced fracture of the thoracic or lumbar spine. Tr. 21, 343, 358. The ALJ further relied upon record evidence that Delgado exhibited no signs of gait abnormality during an examination in January 2020, that she had functionality at the hips, and that Delgado only received conservative treatment for her spinal impairment. Tr. 21, 26, 483.

Contrary to Delgado's contention, the ALJ also did not "improperly assess[], dismiss[], and/or altogether ignore[]" Delgado's need for an assistive device. ECF No. 13 at 22. Rather, the record reveals that the ALJ analyzed and weighed the record evidence in front of her, including a wide range of medical records and opinions including those of Dr. Berkowitz and Dr. Luna, and that she found based on the record evidence that Delgado did not need an assistive device. *See, e.g.*, Tr. 24, 1173 (Delgado "does not use any assistance as of now"), 1341 (orthopedic examination within normal limits).

Here, notwithstanding the record evidence that Delgado points to as supporting a lower or more restrictive RFC, there is substantial record evidence to support the ALJ's RFC determination,

15

and that determination must accordingly be upheld. *See, e.g.*, *Buckwalter*, 5 F.4th at 1320. The Court's role is not to reweigh the evidence.

**C. Delgado's Challenge to the ALJ's Classification of Her Past Relevant Work**

Delgado also challenges the ALJ's classification of her past relevant work. "The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the national economy." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir. 1986)). When considering a claimant's past relevant work, "[t]he regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Jackson*, 801 F.2d at 1293.

Accordingly, when a claimant's particular prior job involved demands, duties, and requirements in excess of what is typically required for that type of work by employers in the national economy, it is not enough for the claimant to show that he cannot complete the requirements of that particular past job; rather, he "must demonstrate an inability to return to the previous *type* of work he was engaged in." *Id.* at 1293-94. However, if the claimant's "past relevant work qualifies as a composite job[,]" which is a job that has "significant elements of two or more occupations and, as such [has] no counterpart in the DOT," SSR 82-61, 1982 WL 31387, at *2,[3] the ALJ must consider the facts of the case and decide whether the claimant can perform his previous work as actually performed. *Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018).

---

[3] The undersigned notes that SSR 82-61 was rescinded and replaced by SSR 24-2p effective June 22, 2024. *See* SSR 24-2P, 89 Fed. Reg. 48479, 2024 WL 2846571. However, the SSA "expect[s] that Federal courts will review [their] final decisions using the rules that were in effect at the time [they] issued the decisions." *Id.* at 48479 n.1, 2024 WL 2846571 at *1 n.1. Here, the rule in effect when the agency issued Delgado's Final Decision was SSR 82-61.

16

In the instant case, the ALJ considered and accepted the unchallenged testimony of the vocational expert and classified Delgado's "past relevant work" as that of a media director, DOT Code 164.117-018.  However, Delgado disputes the ALJ's finding and argues that she was not a media director, but instead, that she had a composite job of an administrative assistant and "something else," which required a greater physical exertion.  ECF No. 13 at 24.  Delgado accordingly contends that the ALJ erred at step four of the disability inquiry by finding that she was not disabled because she could perform the least demanding aspects of her alleged past relevant work.  *Id.* at 26.

Here, however, neither Delgado nor her attorney raised any objection at the hearing to the vocational expert's experience or the vocational expert's classification of Delgado's past relevant work as that of media director.  Tr. 53-55.  Instead, Delgado's attorney accepted the vocational expert's qualifications and affirmatively declined the opportunity to question the vocational expert about his classification of Delgado's past job as that of a media director.  Tr. 53-55.  As a result, the Court finds that Delgado waived any argument regarding her past-work classification.  *See, e.g.*, *McDaniel v. Kijakazi*, No. 22-cv-21201, 2023 WL 5510277, at *15 (S.D. Fla. Aug. 10, 2023) (plaintiff waived her objection that her past relevant work constituted a composite job when she failed to object to the vocational expert's classification).

Moreover, without any objection or reason to doubt the vocational expert's credibility or testimony, the vocational expert's testimony alone provides substantial evidence to support the ALJ's classification of Delgado's past relevant work as that of a media director.  *See Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010); *McDaniel*, 2023 WL 5510277, at *14-15.  Therefore, not only did Delgado waive the argument that her past relevant work was a

composite job, but the ALJ's determination that her previous work should be classified as that of a media director is also supported by substantial evidence.

## IV.     CONCLUSION

For the reasons set forth above, the undersigned **RESPECTFULLY RECOMMENDS** that the Commissioner's Motion for Summary Judgment, ECF No. 17, be **GRANTED**, that Delgado's Motion for Summary Judgment, ECF No. 13, be **DENIED**, and that the Commissioner's decision be **AFFIRMED**.

Within ten (10) days of the date of this Report and Recommendation, that is, **by September 12, 2024**, the parties shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodney Smith, United States District Judge. Failing to file timely objections will bar a *de novo* determination by the District Judge of any issue addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 146-47 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, this 2nd day of September 2024.

EDUARDO I. SANCHEZ
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Rodney Smith
      Counsel of Record